TALLMAN, Circuit Judge,
concurring in part and dissenting in part:
The Supreme Court gave Dwayne Woods an inch. The majority gives him a mile. When the Court remanded this case to the same panel that affirmed Woods’s sentence in 2011, it gave Woods the opportunity to argue that his four proeedurally defaulted claims deserved a federal audience. But none of these new claims cast any doubt on Woods’s manifest guilt for the brutal murders of Jade Moore and Telisha Shaver on April 27, 1996. Fortunately, the third victim of his senseless violence, Venus Shaver, survived to testify against him at trial. And even Woods himself invited his death sentence when, at the penalty phase of the trial, he told the jury that he had “no objection” to a death sentence, and asked them to “go back and return a vote to impose the death penalty.”
Because none of Woods’s new claims would lead a reasonable juror to conclude that Woods did not murder Jade Moore and Telisha Shaver, or attempt to murder Venus Shaver, no court can provide Woods the relief he seeks. The majority’s remand serves only one purpose: unnecessary delay. I respectfully dissent from Sections X.F.1, X.G., and footnote 18 of the majority opinion.
I
On remand from the Supreme Court, we must now consider whether Woods’s four proeedurally defaulted claims meet the narrow requirements of Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). Woods alleges that his trial counsel provided ineffective assistance by failing to: (1) call an expert witness to refute Venus Shaver’s claim that she had recovered memories of the attacks; (2) cross-examine Venus about a false rape allegation against Woods; (3) call a defense expert to interpret the results of the State’s DNA evidence; and (4) explore the possibility of DNA contamination. Woods argues that the ineffectiveness of his post-conviction counsel (“PCR counsel”) excuses the procedural default of these four claims, and that had the jury heard more on these topics, there is a substantial possibility he would have been acquitted.
But Woods is entitled to a remand under Martinez only if he can show that: (1) PCR counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for not raising a claim of ineffective-assistance-of-trial-counsel (“IAC”), and (2) “the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that ... the claim has some merit.” Martinez, 132 S.Ct. at 1318.
The Supreme Court has said that to succeed on a Strickland IAC claim, Woods must show not only that his trial counsel was deficient but also that this deficient performance caused prejudice. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Even if Woods proves that his trial counsel was manifestly ineffective, Woods cannot prevail unless he shows prejudice — “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. Because Woods challenges only his conviction (and not his death sentence), he must demonstrate that his new claims would cause at least one reasonable juror *1141 to find him “not guilty” of the murders of Jade Moore and Telisha Shaver, or the attempted murder of Venus Shaver. This is simply not possible in the face of the incriminating evidence against him.
None of Woods’s new claims can refute the strength of the inculpatory evidence conclusively demonstrating his guilt: (1) Sherry Shaver’s identification of Woods as the man she saw fleeing the crime scene on the morning of the murders; (2) Jade Moore’s statements to a treating paramedic, nurse, and physician, before she succumbed to her injuries, that “a man named Dwayne” hit her “with a baseball bat” and “sexually assaulted” her, and Jade’s statements to her father that her attacker was “Dwayne,” “a guy that Venus had been going out with”; (3) expert testimony that Woods’s latent fingerprints were found on a bottle and on a telephone in the trailer; (4) the fact that Woods’s coat and shirt were found at the crime scene; and (5) paging and telephone records demonstrating that Woods’s pager had been called from the trailer a few hours before the murders. Nor do Woods’s new claims refute the fact that, immediately after the murders, Woods was seen at two businesses near the crime scene, and was then dropped off in downtown Spokane near a number of ATMs where Jade Moore’s stolen ATM card was used to make withdrawals. Finally, the new claims do not challenge Woods’s statements to a friend that he was “a wanted man,” or that Woods led police on a car chase as they attempted to apprehend him, permitting the jury to infer his consciousness of guilt.
The strength of the evidence against Woods was overwhelming. As a result, there is no way Woods can show that, but for counsel’s errors, a reasonable juror would have found that Woods did not murder Jade Moore and Telisha Shaver or attempt to murder Venus Shaver. While it may be “standard practice” for us “to remand to the district court for a decision in the first instance without requiring any special justification for so doing,” we need not do so “where there is little doubt about the correct answer.” Detrich v. Ryan, 740 F.3d 1237, 1248 (9th Cir.2013) (four judge plurality opinion). The majority does not tell us what the district court should do on remand in the face of this record other than reiterate this obvious conclusion. Because Woods cannot possibly show prejudice under Strickland, his new claims are not “substantial,” and a remand to the district court is unwarranted even under Martinez. See also Lopez v. Ryan, 678 F.3d 1131, 1139 (9th Cir.2012) (concluding that a claim was not substantial under Martinez where the petitioner could not show prejudice under Strickland).
II
Even if I thought it necessary to review the performance of Woods’s trial counsel, I would reach the same conclusion: Woods is not entitled to a remand. None of Woods’s newly alleged IAC claims demonstrate that Woods’s counsel’s performance “fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. Nor would any of Woods’s specific claims have been reasonably likely to change the outcome of his trial. Because Woods’s new claims have no merit, they are not substantial under Martinez.
A
Woods first alleges that Venus Shaver “had complete amnesia of the events of April 27,1996.” Dr. Demakas, a neurosurgeon who treated Venus, testified that when he was first examining Venus in the emergency room, she “did not recall what happened” and “was amnesic from the accident.” At that time, Venus was still suffering from the immediate side effects *1142 of blunt head trauma and a large skull fracture. Woods argues that, by the time of trial, Venus had recovered “considerable memory of the events,” and he contends that his counsel was ineffective for failing to call a neuropsychologist who would have testified that such memory recovery is impossible. But Woods’s new claim is much ado about nothing.
While Dr. Demakas did testify that Venus was “amnesic,” he also stated that, while it would not be “uncommon” for Venus to recover memories, these memories might be out-of-order or influenced by suggestive stimuli. Thus, through Dr. De-makas’s testimony, the jury heard that Venus did not immediately recall the events of that evening, and that any recovered memories could be suspect. Additional testimony on this point would have been largely cumulative.
Also, Venus’s memory problems were discussed at length during the trial by Venus herself. Venus recalled in great detail bringing Woods to her house, Woods growing angry, Woods sexually assaulting her, Woods slamming her head into a door, and her repeated attempts to get Woods to leave. After that, however, her memory went blank. The “last thing [she] saw” was “[Woods] coming up to [her].” In response to counsel’s question of “what happens then?” Venus said she “[didn’t] remember ... probably cuz [sic] I got hit.” She repeatedly recognized that her memory of the remainder of the evening was practically non-existent. But the jury could easily fill in the rest of the story from all available evidence, including the recovery from the crime scene of an aluminum baseball bat stained by human blood and the large skull fracture in Venus’s head consistent with being hit by a blunt instrument.
Although Venus could not recall the events of the rest of the evening, except for a few “flashes of memories,” defense counsel expressly suggested to the jury what the source of Venus’s recovered memories really were: newspaper articles, television accounts, and family statements. Defense counsel got Venus to admit on cross-examination that: (1) she had read a lengthy news article about the case while in the hospital even though she knew she wasn’t supposed to; (2) she had watched television accounts of the attack; (3) a television account featured a picture of Woods; (4) she spoke with her family at the hospital about what happened to her; and (5) Dr. Demakas told her that she would have “flashes of memories” about the attacks.
Woods alleges that his counsel should have called an expert to testify on the issue of recalled memory. But the expert’s proposed testimony would have been cumulative. Given that counsel had introduced ample evidence of Venus’s memory problems, counsel’s failure to introduce expert testimony on this point was not deficient under Strickland. The jury heard all of the impeachment through competent cross-examination but obviously believed the eyewitness victim who was present when Woods committed his atrocious crimes. No remand is appropriate on this insubstantial claim. See Sexton v. Cozner, 679 F.3d 1150, 1157-58 (9th Cir.2012).
B
Woods next argues that counsel should have aggressively challenged Venus regarding a statement she allegedly made accusing Woods of rape. But Woods fails to show that his counsel’s decision not to cross-examine Venus was deficient. As the victim of this savage attack, Venus was an extremely sympathetic witness. Arguably, Woods’s counsel acted wisely by not pursuing this point on cross-examination to avoid further alienating the jury. This *1143 strategic decision, by understandably wary defense counsel, is essentially insulated from Strickland reversal. Id. at 1156; Strickland, 466 U.S. at 689, 104 S.Ct. 2052. For that reason, Woods’s counsel was not deficient. ‘
C
Next, Woods challenges his counsel’s failure to call an expert to interpret the results of a DNA test implicating Woods. At trial, the State’s DNA expert, Dr. John Brown, testified that the male DNA recovered from the crime scene matched Woods’s DNA at four of six loci. Dr. Brown concluded that, at the other two loci, the results were inconclusive, although they did not exclude Woods as the donor. Woods argues that, if called to testify, Dr. Donald Riley would have explained that the results at five of the six loci were inconclusive, meaning that Woods’s DNA conclusively matched the DNA recovered at the crime scene at only one locus. But even if Woods’s counsel was deficient for failing to rigorously challenge the DNA evidence with the assistance of a qualified DNA expert, Woods would have, at best, only neutralized this evidence, a narrow sliver of the State’s overwhelming case against him. Even without the DNA, a jury would still find Woods guilty as charged.
D
Finally, Woods claims that his counsel was ineffective for failing to argue that a blood spill in the crime lab might have led to Woods’s blood sample being commingled with vaginal swabs taken from Jade Moore. At trial, State crime lab forensic scientist William Morig explained that Woods’s blood vial spilled in an area of the lab where hair examination took place. Morig testified that once the spill was discovered, the sample was immediately destroyed. On crossexamination, Woods’s counsel re-confirmed the spill. Thus, on two separate occasions, the jury heard that a spill took place in the lab. Trial counsel was not ineffective for declining to introduce additional cumulative testimony on this point. Because the claim is not “substantial” under Martinez, there is no need to remand.
Ill
In support of their decision to remand, my colleagues note that “[a]llowing the district court to consider these issues in the first instance and to potentially conduct an evidentiary hearing will greatly aid this court’s review.” Opinion at 51. They cite to Detrich, where we chose to remand the Martinez question to the district court to allow it to decide the merits first. But even Detrich recognized that if the evidence of guilt was “overwhelming and unassailable,” then “we could safely conclude that [the petitioner] has no real chance of showing that his new trial-counsel IAC claims are ‘substantial.’ ” Detrich, 740 F.3d at 1249. Such is the case here. Because Woods’s guilt is manifest, we can declare on the current record that his claims are not substantial. See Sexton, 679 F.3d at 1158 (concluding that remand to the district court was improper under Martinez because Sexton’s claim was not “substantial”); Murray v. Schriro, 746 F.3d 418, 458 (9th Cir.2014) (concluding that Murray’s ineffective-assistanee-of-trial-counsel claim lacked sufficient merit to warrant a Martinez remand).
Moreover, Detrich is distinguishable. In Detrich, the “central question” was “whether any of Detrich’s newly presented trial-counsel IAC claims prejudiced him at sentencing.” 740 F.3d at 1249 (emphasis in original). Because Detrich’s jury was split on whether Detrich was guilty of first-degree murder or felony murder, the *1144 prejudice inquiry hinged on whether, if evidence that Detrich was the actual killer was weaker, Detrich would nonetheless have been sentenced to death. Id. This was a close question — “if the trial evidence were close, then it would not take too much new exculpatory evidence to call into question the trial judge’s sentencing decision.” Id. Here, Woods’s habeas claims are directed only to his conviction, not his sentence. (Woods did not present any mitigating evidence; instead, he invited the jury to impose the death sentence.) Thus, the relevant prejudice inquiry is not whether Woods’s new claims may have affected the sentence imposed, but whether the new claims cast doubt on Woods’s guilt. They do not.
The majority also notes that “evaluating the substantiality of the new IAC claims requires consideration of the State’s DNA evidence and the reliability and propriety of the inferences the State’s expert drew from it, as well as the likelihood that the DNA evidence was contaminated.” Opinion at 51. But the majority focuses on counsel’s deficient performance and turns a blind eye to the fact that, even if Woods establishes counsel’s' ineffectiveness, he must still show prejudice under Strickland. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052; Lopez, 678 F.3d at 1139. Even if Woods convinces us that his trial counsel was glaringly ineffective, he cannot possibly show that any reasonable juror would have found him not guilty.
IV
In light of the overwhelming evidence against him, no court can grant Woods the relief he seeks. The majority ignores this foregone conclusion, favoring endless litigation instead. The only purpose this remand will serve is to delay for years the seventeen-year-old judgment properly obtained against a murderer who asked the jury to impose the death sentence upon him for what he had done. I respectfully dissent from Sections X.F.1, X.G., and footnote 18 of the majority opinion. I concur in the remaining sections upholding the denial of Woods’s other claims for ha-beas relief.